UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM E. McCARTY,<br>    Plaintiff | :<br>:<br>: |
| v. | : No. 3:03cv00651 (MRK) |
|  | :<br>: |
| DERIVIUM CAPITAL, LLC, et al.<br>    Defendants | :<br>: |

**Ruling and Order**

This case arises out of a claim by Plaintiff William McCarty against Defendants Derivium Capital, LLC and Wachovia Bank, NA for an allegedly deficient loan and relating to one or more brokerage accounts. The parties' contract stated that any disputes would be resolved through arbitration to be conducted in Charleston, South Carolina, under the auspices and rules of Defendant American Arbitration Association ("AAA"). Mr. McCarty originally brought his dispute against Derivium and Wachovia to arbitration – but in New York, not in South Carolina as specified in the parties' contract. As a result, the AAA assigned the arbitration to be conducted in South Carolina in accordance with the parties' agreement. Mr. McCarty also asked the AAA to exempt him from the arbitration-filing and case-service fees, but the AAA only granted a deferral of both fees until the conclusion of the case, when his hardship request would be considered anew.

In 2004, Mr. McCarty filed this action against Derivium, Wachovia, and the AAA. Mr. McCarty claims that the AAA: (1) refused to hold the arbitration in New York, rather than South Carolina, which Mr. McCarty says he could not get to because of a disability; (2) refused to grant him an exemption from arbitration fees; and (3) generally delayed the processing of his claim. While the precise nature of Mr. McCarty's legal claims against the AAA is not certain, it appears that he

asserts that the aforesaid actions of the AAA violated his rights under the Fifth and Fourteenth Amendments to the Constitution and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. He asks the Court to fine the AAA and award him punitive damages of $25,000. *See* Complaint [doc. # 2]. The AAA has now moved to dismiss Mr. McCarty's claims under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* because the AAA is immune from such claims under the doctrine of arbitral immunity. *See* Defendant American Arbitration Association's Motion to Dismiss [doc. # 52].

Having considered all of the submissions of both parties, the Court agrees with the AAA that it is immune from any damage claims arising out of its handling of Mr. McCarty's arbitration. Arbitral immunity against damages suits is well established in the Second Circuit and elsewhere. *See, e.g.*, *Int'l Medical Group, Inc. v. American Arbitration Assoc., Inc.*, 312 F.3d 833 842-44 (7th Cir. 2002) (holding the AAA immune from suit for wrongfully exercising jurisdiction over a party that had not agreed to arbitration); *Olson v. National Ass'n of Securitites Dealers,* 85 F.3d 381, 382 (8th Cir. 1996) ("[A]rbitral immunity extends beyond arbitrators themselves to organizations that sponsor arbitrations."); *Austern v. Chicago Board of Options Exchange, Inc.*, 898 F.2d 882, 885-87 (2d Cir. 1990) (holding that arbitrators are absolutely immune "from civil liability for all acts performed in their arbitral capacity").

In *Austern*, as here, plaintiffs sued a commercial organization sponsoring a contractually agreed-upon arbitration for damages arising from the organization's conduct in connection with the arbitration. The Second Circuit noted at the outset that courts had long held, by analogy to absolute judicial immunity, that arbitrators themselves were absolutely immune from liability in damages for all acts within the scope of the arbitral process. According to the Court, that same immunity also

should shield the arbitration-sponsoring organization "for all functions that are integrally related to the arbitral process." *Austern*, 898 F.2d at 886. For as the Second Circuit explained:

> [E]xtension of arbitral immunity to encompass boards [that] sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illus[ory]. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

*Id.* (alterations in original) (quoting *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir. 1982)).

Moreover, the Second Circuit refused to draw a distinction between the sponsoring organization's administrative and decision-making functions: "[S]emantically categorizing the challenged acts as 'ministerial' or administrative, as opposed to 'discretionary,' in large part misses the mark, since the scope of arbitral immunity is defined by the *functions* it protects and serves." *Austern*, 898 F.2d at 886 (internal quotation marks omitted). The Court went on to hold that the sponsoring organization was immune for its allegedly defective notice and improper selection of the arbitration panel, because these actions were "performed directly in connection with the [organization's] management of contractually agreed upon arbitration" and "were sufficiently associated with the adjudicative phase of the arbitration to justify immunity." *Id.*; *see also Yadav v. New York Stock Exchange, Inc.*, No. 91 Civ. 2256, 1992 WL 197409, at *3 (S.D.N.Y. Aug. 4, 1992) (holding the NYSE immune from suit for its unnecessary delay in sending plaintiff an arbitration award and poorly advising him about an appeal).

In this case, the decisions by the AAA that form the basis of Mr. McCarty's claims occurred in connection with the AAA's management of the contractually agreed-upon arbitration between Mr. McCarty and Derivium. Because the AAA's conduct was "integrally related to the arbitral process,"

*Austern*, 898 F.2d at 886, the AAA is absolutely immune from liability on Mr. McCarty's claims. *See, e.g.*, *Republic of Ecuador & Petroecuador v. Chevrontexaco Corp.*, No. 04 Civ. 8378, 2004 WL 2813510, at *1 (Dec. 7, 2004) ("The immunity of an arbitration association from suit where its sole role is that of a neutral party whose arbitration services have been invoked by one party and where it is not a necessary party has been well established.") (granting immunity to the AAA). That Mr. McCarty asserts constitutional and statutory violations by the AAA makes no difference. *See, e.g.*, *Hudson v. American Arbitration Association, Inc.*, 101 Fed. Appx. 947, 947 (5th Cir. June 17, 2004) (holding that "[a]ny equal protection claims or claims of misdeeds by the [AAA] are barred by arbitral immunity"); *Austern*, 898 F.2d at 885 (holding an arbitral organization immune from claims that the organization violated plaintiffs' rights under the Fourteenth Amendment and the Illinois Constitution). *Cf. Haas v. Quest Recovery Serv., Inc.*, 338 F. Supp.2d 797, 805 (N.D. Ohio 2004) (finding a judge entitled to absolute judicial immunity from ADA claims based upon his conduct in sentencing); *Roe v. Johnson*, 334 F. Supp.2d 415, 423-24 (S.D.N.Y. 2004) (holding that absolute judicial immunity shields members of a character and fitness committee from ADA claims)

Therefore, the Court GRANTS the AAA's Motion to Dismiss [doc. # 52]. The Court notes that since Mr. McCarty's claims against Defendants AAA and Derivium have been dismissed, *see* Notice of E-Filed Order [doc. #47] (granting Mr. McCarty's motion to dismiss Derivium), only his claims against Defendant Wachovia remain. The Court orders both parties to file a report **by December 5** detailing the status of Mr. McCarty's claims against Wachovia Bank, NA.

                                              IT IS SO ORDERED,


                            /s/      Mark R. Kravitz
                                  United States District Judge


Dated at New Haven, Connecticut: **November 21, 2005**